1  LAURA E. DUFFY
   United States Attorney
2  WILLIAM P. COLE
   CAROLINE P. HAN
3  Assistant United States Attorney
   Cal. State Bar No. 186772/250301
4  STEVEN P. WARD
   Trial Attorney
5  D.C. Bar No. 395410
   Federal Office Building
6  880 Front Street, Room 6293
   San Diego, California  92101-8893
7  Telephone: (619) 546-6762/6968
   Email:   William.P.Cole@usdoj.gov
8           Caroline.Han@usdoj.gov

9  Attorneys for Plaintiff
   United States of America

10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,      ) Crim. Case No. 10CR4246-JM
                                  )
14      Plaintiff,                )
                                  ) **UNITED STATES' OBJECTIONS
15      v.                        ) TO DEFENSE DEPOSITIONS
                                  ) AND RESPONSE TO DEFENSE
16 BASAALY SAEED MOALIN,          ) OBJECTIONS**
   MOHAMED MOHAMED MOHAMUD,       )
17 ISSA DOREH,                    )
   AHMED NASIR TAALIL MOHAMUD,    )
18                                )
                                  )
19      Defendants.               )
                                  )
20                                )

21

22

23

24

25

26

27

28

The Djibouti depositions yielded 16 tapes, and, therefore, 16 transcripts.  The transcript number (e.g., TAPE 01, TAPE 02, TAPE 03, etc.) appears in the header on each page of each transcript.

The parties used the following color-coding in the transcripts submitted to the Court:

1.   Yellow:  United States' objections

2.   Green:   Defense objections

3.   Blue:   Defense objections that the defense anticipates will be moot if/when other evidence is admitted

| Portion: | Objection: |
| --- | --- |
| Tape 1, p.11:5-11 | **Hearsay.**  Defendants cannot elicit defendant Moalin's own out-of-court statements.  Apart from the truth, it is not relevant. |
| Tape 1, p.11:20-23 | **Hearsay.**  Same basis. |

| Tape 1, p. 21:15 to p.23:20 | **Hearsay.** The audio recording played by the defense is an out-of-court conversation with defendant Moalin. The portion from page 22, line 17 to page 23, line 13 is also non-responsive, as acknowledged by the defense on the transcript. |
|---|---|
| Response to defense objection:<br>Tape 2, p.13 | The deponent testified that he operates a telephone call center in Somalia and has done so for many years. He has ample foundation for the basic questions put to him by the United States. |
| Response to defense objection:<br>Tape 2, p.16:25-17:2 | The deponent has foundation to testify concerning why he himself would make a call. |

| Tape 3, p.6:4-10 | **Hearsay.** The deponent repeats what third parties (including defendant Moalin) allegedly told him out of court. |
|---|---|
| Tape 3, p.11:26 to 12:15 | **Hearsay.  Relevance.  403.** In addition to testifying to defendant Moalin's out-of-court statement, the deponent's testimony concerning unspecified acts of "charity" is irrelevant and more prejudicial than probative.  The deponent never tied these alleged charitable acts to any of the financial transactions alleged in the indictment. In fact, the deponent never even tied any of these unspecified charitable transfers to any organization (e.g., Ilys or the Drought Relief Committee). |

4

| | |
|---|---|
| Response to defense objection:<br>Tape 3, p.18:9-13 | Defendant Moalin's own statement is not hearsay when elicited by the United States (party opponent). |
| Response to defense objection:<br>Tape 3, p.25:4-12 | Scope should not be strictly limited in light of the depositions providing the only opportunity to examine the witness. The deponent lived and worked in Guriceel, and could testify to his own knowledge of the events occurring in his small town. |
| Response to defense objection:<br>Tape 4, p.5:7-15 | The deponent was asked to testify to the extent of his own knowledge. Moreover, the defense elicited substantial testimony from the same deponent concerning Hassan Guled and his security forces. |

| | |
|---|---|
| Tape 5, p.17:19-24 | **Relevance.  403.**  Defendant Moalin entered the United States over a decade before any conduct alleged in this case.  The reasons for his leaving Somalia and coming to the United State are not relevant. |
| Tape 6, p.5:19 to p.6:6 | **Relevance.  403.**  The deponent never testified that any of the transfers actually alleged in the indictment were either received by the deponent or used to support orphans. |
| Tape 6, p.6:15-28 | **Relevance (see above). 403.  Hearsay.  Foundation.** |
| Tape 6, p.6:15 to 7:22 | **Relevance (see above).** |
| Tape 6, p.7:24 to 8:3 | **Relevance.  403.  Hearsay.** |

| Tape 6, p.8:22 to 11:10 | **Relevance.** The United States wishes to preserve this objection for further reviewed based on other evidence admitted or excluded in the defense case. |
|---|---|
| Tape 6, p.11:27-12:3 | **Hearsay.** The out-of-court statement has no relevance apart from the truth of the matter asserted. |
| Tape 6, p.13:20-14:5 | **Hearsay. Foundation.** There is no possible foundation established for this testimony apart from implicit hearsay. |
| Tape 6, p.16:4-22. | **Relevance. 403.** There was no testimony as to when the photograph was taken or what connection it had, in any way, to any defendant in this case, much less any transfer alleged in the indictment. |

| Tape 6, p.16:23 to 18:12. | **Hearsay.** The out-of-court statements have no relevance apart from the truth of the matters asserted. |
|---|---|

| | |
|---|---|
| Tape 6, 18:13 to 22:10 | **Hearsay.  Foundation. Relevance.**  The deponent testified simply that he received the document by email while he was not even in Somalia.  He testified that it was merely sent to him for his "information." He did not lay a proper foundation under Fed. R. Evid. 803(6), nor did he establish any personal knowledge that would allow him to do so.  Finally, the deponent did not provide any testimony linking the hearsay document to any defendant's activities or any transfers alleged in the indictment. |

| | |
|---|---|
| Tape 7, p.13:4-10 | **Foundation.** The deponent was not a member of the police force, or a lawyer, and provided no foundation for testifying as to what laws the police force did or did not enforce. |
| Tape 7, p.17:3-9 | The United States withdraws this objection. |
| Tape 8, p.3:21-24 | **Relevance.** |
| Tape 8, p.5:19 to p.6:28 | **Relevance. Hearsay.** There is no relevance to the deponent having felt threatened by al-Shabaab in 2009, long after the time period covered by the offenses alleged in the indictment. Moreover, the testimony is hearsay, as the deponent testified that he heard "secret" information about the threat from a third person. |

| | |
|---|---|
| Tape 8, p.7:1 to 10:12 | **Relevance.  Hearsay.** Exhibit M is merely a print-out of something that the deponent testified he saw on the internet.  It has no authenticity or foundation and is hearsay. Moreover, there is no relevance to the fact that the deponent read something on the internet in May 2009, long after the period covered by the indictment. Contrary to the defense's response to this objection, the effect this document may have had on the *deponent* is not relevant to any issue in this case. |

| | |
|---|---|
| Response to defense objection: Tape 8, p.23:8-10 | The witness digressed the first time the question was asked, so the prosecutor asked the direct question again and received a direct respond.  Considering this was cross-examination, the "asked and answered" objection should not be sustained. |
| Response to defense objection: Tape 9, p.1:6-11 | The defense's foundation objection is not well taken, because the deponent previously testified that he knew Ayrow personally and met with him, and the question was limited in scope to the deponent's own knowledge. |

| Response to defense objection:<br>Tape 9, p.3:13-20 | In the deponent's direct examination, defendants elicited extensive testimony from the deponent about the history, purposes and structure of the Council of Islamic Court. On the basis of their own examination, he has sufficient foundation to answer a question as basic as whether the CIC fought against the TFG. |
| --- | --- |

| Response to defense objection: Tape 9, p.11:11-22 | During direct examination, the deponent testified extensively concerning the workings of the local administration in Guriceel, the establishment of a clan police force, Hassan Guled (the police chief), the police force's budget and activities, and the scope of the police force's responsibilities. See, for example, Tape 5 (pages 9-14) and Tape 7 (pages 3-16). In fact, the defense specifically asked the deponent about the geographic area that Guled's police force was responsible to secure (Tape 7, p.7-8). Accordingly, Tape 9, page 11 constituted appropriate cross-examination. |

| Response to defense objection: Tape 9, p.17:11-24 | Defendant's answers did not contain any hearsay. Moreover, Exhibit 103 (a photograph of al-Shabaab commander Mukhtar Robow) should be admitted because, on page 16 of the transcript, the witness identified the person in the photograph. |
|---|---|
| Response to defense objection: Tape 9, p.18:19-22 | The defense's foundation objection is not well taken because the question addresses only the extent of the witness's personal knowledge. |
| Response to defense objection: Tape 9, p.19:1-4 | Same as immediately above. |

| | |
|---|---|
| Response to defense objection: Tape 9, p.21:11-13 | The defense's relevance objection is not well taken because Fuad Shongole is referenced in the audio recordings the United States will introduce at trial. |
| Response to defense objection: Tape 9, p.23:11-16 | As stated previously, considering the extensive testimony the defense elicited from the deponent on direct examination concerning Somali history, the CIC, al-Shabaab and the Ethiopians, this question on cross-examination was proper and relevant. |
| Response to defense objection: Tape 9, p.24:6-11 | The question and response are relevant because they provide important context for the jury to evaluate whether Hassan Guled is the "Shikhalow" on the audio calls, as the defense claims |

| Response to defense objection:<br>Tape 10, p.1:24 to 2:14 | When the United States (party opponent) elicits defendant Moalin's statements, it is not hearsay. |
|---|---|
| Response to defense objection:<br>Tape 10, p.4:2 to p.5:1 | The word "jihad" is used in defendant Moalin's own telephone communication with "Shikhalow." Because the defense is attempting to portray "Shikhalow" as Hassan Guled, rather than Ayrow, questions concerning whether Guled was ever heard to use the word jihad are highly relevant. Moreover, the witness did not communicate any hearsay statement. |

17

| | |
|---|---|
| Response to defense objection:<br>Tape 10, p.6:15 to 7:11 | The defense argument that "gaalo" can be translated several ways is no basis for an objection.  The interpreter at the deposition translated the word "infidel" as "gaalo" (or "gaal").  And the defense itself lists "infidel" as one way it can be translated.  In any event, the word "gaalo" is highly relevant because it is used many times in the audio calls that will be introduced at trial. |
| Response to defense objection:<br>Tape 10, p.10:23-11:6 | The deponent testified to numerous prior conversations with Basaaly Moalin and Farah Yare.  Therefore, the deponent can state an opinion as to voice identification. |

| | |
|---|---|
| Tape 10, p.20:7-16 | **Foundation.**  The deponent's own answers reveal his lack of knowledge and the lack of foundation. |
| Tape 10, p.21:14 to 22:21 | **Relevance.**  The deponent is describing events in December 2008 and thereafter, months after the period covered by the indictment. |
| Tape 11, p.2:22 to 3:11 | **Relevance.**  The religious beliefs of defendant Moalin's wife are not probative of any issue in the case. |
| Tape 11, p.4:10-14 | **Relevance.  Non-responsive.** Whether Ahlu Sunna used defendant Moalin's house with his consent in 2009, long after the time period of the indictment, is not relevant. |

| | |
|---|---|
| Tape 11, p.5:15-18 | **Relevance.** There is no probative value to the fact that al-Shabaab destroyed the deponent's house, much less in 2009. |
| Tape 11, p.18, 19 and 20 | The United States concedes the defense's objections on these pages. |
| Tape 12, p.7:10 to 10:7 | **Relevance.** The deponent never testified that any transfer alleged in the indictment was intended for, or used for, orphan care. |
| Tape 12, p.10:20 to 11:5 | **Relevance. Foundation.** The deponent never provides any basis for knowing whether defendant Moalin sent funds for orphan care. |
| Tape 12, p.11:13-12:10 | **Relevance.** |

| Tape 12, p.21:1-17 | **Foundation. Hearsay. Relevance.** As previously explained, Exhibit M is merely a print out of something the deponent saw on the internet in 2009. |
|---|---|
| Tape 12, p.22:12 to 23:3 | **Foundation. Hearsay.** The deponent laid no foundation or non-hearsay basis for testifying as to what Farah Yare may have received funds for. |
| Response to defense objection:<br>Tape 12, p.24:23-25:11 | The redirect concerned the diaspora funding drought relief and other causes. Moreover, the scope should not be strictly limited as the witness is unavailable and cannot be called by the government in rebuttal. |
| Tape 13, p.18:4-7 | **Hearsay.** |

| | |
|---|---|
| Tape 13, p.24:2-11 | **Hearsay.  Foundation.** There is no foundation for the testimony other than the stated hearsay. |
| Tape 14, p.12:15-25 | **Relevance.** |
| Tape 14, p.13:6-9 | **Relevance.** |
| Response to defense objection: Tape 14, p.21:18-26 | On cross-examination, the United States is entitled to ask the deponent about his prior testimony. Defense counsel's objection is argument, not an objection. |
| Response to defense objection: Tape 14, p.22:12-14 | Again, the defendant's objection is actually just argument. |
| Response to defense objection: Tape 14, p.24:20 to 25:9 | The defense did not state any basis for the objection, nor is any apparent. |

| | |
|---|---|
| Response to defense objection: <br> Tape 15, p.6:18-26 | On the audio calls, "Shikhalow" uses the word "jihad."  The defense is trying to portray the deponent as "Shikhalow," therefore the questions concerning the word "jihad" are relevant. |
| Response to defense objection: <br> Tape 15, p.18:12 to 20:1 | The interpreter at the deposition provided the word "gaal" for "infidel." In any event, starting on page 19, line 3, the United States started using the word "non-Muslim" as the defense desired, so it is not clear why the objection continues beyond that point. |
| Response to defense objection: <br> Tape 15, p.22:12-16 | Fuad Shongole is discussed on the audio recordings the United States will introduce at trial. |

| | |
|---|---|
| Response to defense objection: Tape 15, p.22:24 to 23:15 | Defendant Moalin not only speaks about Mahad Karate, but speaks with Mahad Karate, on the audio calls the United States will introduce at trial.  The deponent, a lifelong resident of Somalia and the alleged leader of a security force fighting against al-Shabaab can testify that Mahad Karate was one of the well-known leaders of al-Shabaab. |
| Response to defense objection: Tape 15, p.24:8 to 25:19 | The United States does not know the basis of this defense objection.  In any event, if there is a dispute over a translation, the United States would be entitled to ask questions relevant to its translation. |

DATED:   January 14, 2012

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

*William P. Cole*
WILLIAM P. COLE
CAROLINE P. HAN
Assistant United States Attorneys
STEVEN P. WARD
Trial Attorney

Attorneys for Plaintiff
United States of America

10cr4246-JM