UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>MOHAMED MOHAMED MOHAMUD,<br><br>                              Defendant. | Case No.:  10cr4246 JM<br><br>**ORDER ON MOTION FOR COMPASSIONATE RELEASE (OR INDICATIVE RULING)** |

Pending before the court is Defendant Mohamed Mohamed Mohamud's Motion for Compassionate Release (or Indicative Ruling) under 18 U.S.C. 3582(c).  (Doc. No. 525.) Upon careful review of the pleadings submitted and after considering the applicable factors provided, IT IS HEREBY ORDERED that the motion is **denied**.

I.   **Background**

Mr. Mohamud was charged with conspiring with three other individuals to send money to Somalia to support al-Shabaab, a designated foreign terrorist organization. Between January and August of 2008 thousands of dollars were sent.  On February 22, 2013, Mr. Mohamud was convicted of four federal crimes of terrorism: (i) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A(a); (ii) conspiracy to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1); (iii) conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(2)(A) and (h); and (iv) providing and attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1) and (2).  On

November 18, 2013, Mr. Mohamud was sentenced to 156 months imprisonment and 3 years of supervised release for each count to run concurrently. (Doc. No. 393.)

Mr. Mohamud is currently incarcerated at FCI, Victorville, Medium I ("Victorville"). He is set to be released on November 28, 2021. (Doc. No. 536-1 at 7.)

On April 20, 2021, Mr. Mohamud, through counsel, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing extraordinary reasons caused by the outbreak of COVID-19. (*See* Doc. No. 525.) An amended briefing schedule was ordered by the court. (Doc. No. 530.) After initially filing its Response in Opposition, the Government withdrew it, and then refiled. (Doc. Nos. 533, 534, 535, 536, 538.) Mr. Mohamud timely filed his Reply on June 6, 2021, (Doc. No. 549).

## II.  Jurisdictional Issue

"The filing of a notice of appeal is an event of jurisdictional significance," because "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982) (per curiam). The principle of exclusive appellate jurisdiction is not, however, absolute. *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001). The district court retains jurisdiction to act to preserve the status quo. *Id.* This rule applies in criminal cases. *United States v. Ortega-Lopez*, 988 F.2d 70, 72 (9th Cir. 1993).

On November 28, 2013, Mr. Mohamud filed a notice of appeal of final judgment challenging his conviction on a handful of evidentiary grounds and also sought a new trial, (Doc. No. 398). On September 2, 2020, the Ninth Circuit affirmed the convictions of Mr. Mohamud and the three other defendants. *United States v. Moalin,* 973 F.3d 977 (9th Cir. 2020).[1] The defendants and the Government have filed Petitions for Rehearing *en banc* (*see* Doc. No. 507); therefore, the appeal is still pending.

---

[1] The three-judge panel ruled that because the wiretap evidence from co-defendant Moalin's phone was not fruit of the unlawful metadata collection, its suppression was not

Defense counsel asks this court for an indicative ruling under Federal Rule of Criminal Procedure 37. (Doc. No. 525 at 2.[2]) Federal Rule of Criminal Procedure 37 provides that, if a party moves for relief that the court lacks authority to grant because an appeal is pending, "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). Because this court would deny Mr. Mohamud's motion if an appeal was not pending, the court, in the interests of judicial economy, will proceed and consider the merits of the motion. *See, e.g., United States v. Connor*, Criminal Case No. 16-00002, 2021 WL 1257363, at *1, (D. Guam. Mar. 18, 2021) (defendant's appeal divested the court of jurisdiction to order a sentence reduction.); *United States v. Hamlett*, No. 3:18-cr-00024 (VAB), 2021 WL 406440, at * 4 (D. Conn., Feb. 5, 2021) (the question of whether the court lacks jurisdiction is relevant only where the court is inclined to, on the merits, grant defendant's motion.)

### III. The Merits

Generally, a court may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Mr. Mohamud seeks modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat.5194 (Dec. 21, 2018).

///

///

---

warranted. *Moalin*, 973 F.3d at 997. Further, the Ninth Circuit held that the evidentiary rulings challenged by the defendants did not, individually, or cumulatively, impermissibly prejudice the defense. *Id*. at 1003-1006.

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

**a. Exhaustion**

The First Step Act allows prisoners to bring their own motions for compassionate release after: (1) fully exhausting administrative appeals of the Federal Bureau of Prisons' ("BOP") decision not to file a motion, or (2) "the lapse of 30 days from the receipt ... of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). Thereafter, upon considering the applicable factors set forth in section 3553(a), the court may determine whether "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Mr. Mohamud first informally submitted a request for compassionate release to the Warden of Victorville on October 5, 2020. (Doc. No. 536-1 at 19.) The request was denied on October 14, 2020. Mr. Mohamud then formally submitted a request for compassionate release to the Warden on October 14, 2020. (Doc. No. 525 at 10; Doc. No. 536-1 at 17, 28.) The request was denied on October 21, 2020. (Doc. No. 525 at 11-12; Doc. No. 536-1 at 21-21, 29-30.) On November 10, 2020, Mr. Mohamud filed a regional administrative remedy appeal. (Doc. No. 525 at 13-14; Doc. No. 536-1 at 24-26.) The regional director denied his appeal on February 16, 2021. (Doc. No. 525 at 15; Doc. No. 536-1 at 27.) Notably, however, Mr. Mohamud did not file a further appeal with the Office of the General Counsel. (*See* Doc. No. 536-1 at 3-4, ¶ 5.)

Despite Mr. Mohamud's failure to file a further appeal with the Office of the General Counsel, the Government "concedes that Mohamud has satisfied the exhaustion of administrative remedies requirement." (Doc. No. 536 at 21.)

Notwithstanding the Government's concession, this court views § 3582's exhaustion requirements as mandatory for inmates held in BOP custody. *See, e.g., Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1197 (9th Cir. 1998) (citation omitted) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court."); *see also United States v. Wang*, Case No. 19-cr-01895-BAS-1, 2020 WL 6582685, at * 2 (S.D. Cal. Nov. 10, 2020) (joining the vast

majority of courts in this circuit that have found exhaustion of § 3582 mandatory); *United States v. Casanova,* Case No.: 14-CR-0312 L, 2020 WL 5203407, at * 1 (S.D. Cal Sept. 1, 2020) (concluding the court had no authority to consider defendant's motion until the exhaustion criteria of § 3852(c)(1)(A) is met); *United States v. Otero*, Case No.: 17cr879-JAH, 2020 WL 1912216, at * 4 (S.D. Cal. Apr. 20, 2020) ("[F]ailure to exhaust administrative remedies is fatal to a compassionate release petition, even in light of the urgency created by COVID-19.") ; *United States v. Reid*, Case No. 17- cr-00175-CRB-1, 2020 WL 1904598, at * 3 (N.D. Cal. Apr. 18, 2020) ("The Supreme Court has stated that '[w]here Congress specifically mandates, exhaustion is required.'") (citations omitted); *United States v. Eberhart*, No. 13-cr-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Fuentes*, No. 2:07-CR-0248-11 WBS, 2020 WL 1937398 (E.D. Cal. Apr. 22, 2020); *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020).  Therefore, because Mr. Mohamud did not exhaust his administrative remedies by filing an appeal with the Office of the General Counsel, the court could, and does, deny Mr. Mohamud's request on this ground alone.

### b. Extraordinary and Compelling Reasons

Even if the court were to reach the merits, Mr. Mohamud's generalized concerns that his age and various health conditions make him particularly susceptible to COVID-19 (*see* Doc. No. 525 1-9) are insufficient to show an "extraordinary and compelling" reason for release.

Mr. Mohamud is eligible for compassionate release only if he can demonstrate "extraordinary and compelling reasons" to justify a sentence reduction.  18 U.S.C. § 3582(c)(1)(A).  In *United States v. Aruba*, 993 F.3d 797, 802 (9th Cir. 2021), the Ninth Circuit recently clarified that the United States Sentencing Commission's policy statement, section 1b1.13, setting forth several "extraordinary and compelling reasons" standards for early release, "is not an 'applicable policy statement[]' for 18 U.S.C. § 3583(c)(1)(A) motions filed by a defendant."  Rather, "[t]he Sentencing Commission's statements in U.S.S.G. may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a

defendant, but they are not binding." *Id.* The commentary to § 1B1.13 lists four circumstances that qualify as "extraordinary and compelling reasons": (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) "[o]ther reasons—[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1.

### 1. Defendant's Medical Conditions

In his opening brief, Mr. Mohamud, who is 48 years old, argued that he suffers from asthma, high blood pressure, hypertension, has a long history of smoking, and is at risk of contracting the virus a second time. (Doc. No. 525 at 1, 5-7.) However, in his reply brief, he concedes that "the records provided by the United States do not show that he suffers from an elevated risk for coronavirus and that he has been vaccinated. (Doc. No. 549 at 2.)

According to the medical records filed under seal, Mr. Mohamud tested negative for COVID-19 multiple times (Doc. No. 538-5 at 3-4, 7, 9, 12, 14) before testing positive on December 21, 2020, (*Id*. at 5). Mr. Mohamud recovered and was removed from isolation on January 11, 2021. (*Id*. at 1.) Subsequently, Mr. Mohamud was administered two-shots of the COVID-19 vaccine and is considered fully vaccinated. (Doc. No. 538)

A further inspection of Mr. Mohamud's sealed medical records provides no indication he suffers from asthma, high blood pressure, or hypertension as he suggests. (*See generally* Doc. Nos. 538-1, 538-2, 538-3, 538-4; *see also* Doc. No. 536-1 at 31 "[t]his inmate does not have a condition identified by CDC as placing the inmate at a higher risk of serious COVID illness".) The records do not support Mr. Mohamud's allegations that he is currently receiving any treatment for these conditions. Furthermore, given the fact that Mr. Mohamud is now fully vaccinated against COVID-19 (*see* Doc. No. 538), there appears to be no heightened cause for concern he will contract the virus a second time. *See United States v. Eberhard,* Case No. 13- cr- 00313- PJH-1, 2020 WL 1450745, at *2 (N.D.

Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement."); *United States v. Cordova,* Case No. 19-cr-02453-BAS-1, 2020 WL 7056301, at *2 (S.D. Cal. Dec. 2, 2020) ("The simple fact that [defendant] smoked one cigarette every other day while he was a teenager is insufficient to show extraordinary and compelling circumstances for his release. This is particularly true because the facility where he is being house appears to have dealt with the pandemic."). Mr. Mohamud has not persuaded the court that his alleged, yet undocumented, medical conditions qualify as "extraordinary and compelling" reasons for release within the context of 18 U.S.C. § 3582 (c)(1)(A).

## 2. Ongoing Conditions at Victorville

In support of his motion, Mr. Mohamud points to the ongoing conditions at Victorville, contending that although conditions have improved at the prison, there is still an active COVID-19 case there. (Doc. No. 525 at 5-6.) In his reply, Mr. Mohamud argues that his "conditions of confinement have been much more difficult than the Court could have anticipated at the time of sentencing," citing the "near-complete lockdown of the institutions for seventeen months and counting," "no programming, no visiting, with inmates mostly confined to the cells," as an "unaccounted-for equitable factor." (Doc. No. 549 at 5.)

As this court has explained in other cases, while Mr. Mohamud has had to endure the restrictions he lists, he is not alone. The country, indeed, the world, is living under the shroud of COVID-19 and has to make daily lifestyle adjustments. Mr. Mohamud appears to "overlook[] the fact that the BOP has implemented various preventive and mitigating measures to protect inmates and staff at its facilities." *United States v. Iribe*, Case No. 00cr1242 JM, 2021 WL 347692, at *4 (S.D. Cal. Feb. 2, 2020). The success of the safeguards is best illustrated by the BOP's website which currently shows that there are 0 confirmed active inmate COVID-19 cases, and 9 active staff COVID-19 cases at Victorville Medium I. *See* https://www.bop.gov/coronavirus/ (last visited September 24,

2021)³. Currently, the BOP has completed inoculations on 417 full-time staff and 2781 inmates at Victorville FCC⁴. *See* https://www.bop.gov/coronavirus/ (last visited September 24, 2021).⁵ While the court is aware of the high number of COVID-19 cases at the facility at the beginning of the pandemic, and the fact that an element of risk still remains, this progress should not be ignored. *See, e.g., United States v. Del Rosario Martinez,* No. 19CR5218-MMA, __ F. Supp. 3d __. 2021 WL 956158, at *3 (S.D. Cal. Mar. 10, 2021) (agreeing "with other district courts that Defendant's 'vaccination significantly mitigates the risk that [he] will contract COVID-19,' much less become seriously ill.") (collecting cases). As of the filing of this order, the court is also aware of the concerns of public health officials over the "Delta Variant" of COVID-19, and the ongoing discussions regarding the need to offer booster shots to the prison population. Consequently, the present conditions at Victorville, and the measures taken by the BOP to mitigate the risks of COVID-19 transmission in the BOP population, weigh against release under 18 U.S.C. § 3582 (c)(1)(A).

### c. Factors under § 3553(a)

The court finds a sentence reduction is inconsistent with the applicable policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3553(a). The introductory portion of this section instructs courts to "impose a sentence sufficient, but

---

³ The website also records 2 inmate COVID-19 deaths, 520 inmates recovered COVID-19 cases, and 84 staff recovered COVID-19 cases.

⁴ The inoculation number posted on the BOP prison website is not broken down by individual complex and appears to include Victorville Medium I, Victorville Medium II and USP Victorville.

⁵ Victorville Medium I houses 1326 inmates, Victorville Medium II houses 1188 inmates, and Victorville USP houses 1050 inmates, for a total of 3564 inmates. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (last visited September 24, 2021).

not greater than necessary" to punish, deter, protect the public, and rehabilitate the defendant.

The nature and seriousness of Mr. Mohamud's offenses should not be minimized. He provided support for and buttressed the campaign of terror by Al-Shabaab in Somalia. Al-Shabaab's terrorist tactics included targeted bombings, assassinations, murder, and mayhem.

The seriousness of Mr. Mohamud's crimes, therefore, does not support the granting of his motion, nor do relevant sentencing purposes such as general and specific deterrence and protection of the public.  The court carefully considered Mr. Mohamud's role as an imam, as well as his substantial charity, education, and spiritual work in the community when it originally imposed sentence, thereby rejecting the recommendations of the Government and the U.S. Probation for a life sentence.  Had the court not taken into account Mr. Mohamud's equities, he would have been facing substantially more time. Releasing Mr. Mohamud at this juncture given his support for foreign terrorists would be unwarranted.

Mr. Mohamud is to be commended for his mostly positive disciplinary record (Doc. No. 536-1 at 10-17) and participation in educational programs, (*see* Doc. No. 525 at 16). Although the current circumstances at Victorville are less than ideal, with many restrictions in place, the court is not persuaded that the present situation outweighs the aggravating factors outlined above. Understandably, many activities were put on hold while the whole country, including Victorville, has dealt with the pandemic; however, it is likely that as the threat of COVID-19 diminishes, normal prison activity will resume.  Moreover, the court is not persuaded the medical conditions provide a reason for release.  Mr. Mohamud was adequately treated for COVID-19, as demonstrated by his recovery, he has since received the vaccine, and there is no documentary support for any of the alleged medical conditions.

As to Mr. Mohamud's desire for early release so that he may begin the process associated with his immigration detainer (Doc. No. 525 at 4), this fact also cautions against release.  Mr. Mohamud's inconsistent positions give the court pause for concern.  On one

hand, Mr. Mohamud maintains that "returning him to Somalia right now has the value that Somalia is currently accepting deportees. That this has not always been the case, and if it stops because the government in Mogadishu destabilizes, Mr. Mohamud might get stuck in the purgatory of immigration custody," (Doc. No. 549 at 3). Yet on the other, he states that were he allowed to remain in the United States, "he could stay with his family and work in his community because he is a polyglot with erudition in Islamic studies" without providing any further details (Doc. No. 525 at 5). At the end of the day, this court is not in the business of speculating how United States Immigration and Customs Enforcement will process Mr. Mohamud upon releases and declines to involve itself in the process.

Considering the relevant circumstances, the factors supporting a denial of Mr. Mohamud's motion outweigh the factors supporting a grant of his motion. Consequently, the court finds that even if Mr. Mohamud's circumstances qualified under the extraordinary and compelling reasons standard, a reduction of his sentence would not be justified under 18 U.S.C. § 3553, and denies his motion on this additional, independent ground.

### IV. Conclusion

For the reasons set forth above, Mr. Mohamud's Motion for Compassionate Release (or Indicative Ruling) is **DENIED**.

IT IS SO ORDERED.

Dated: September 29, 2021

Hon. Jeffrey T. Miller
United States District Judge